UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TAMMY L. WELCH, ) | CASE NO. 1:10CV1434 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE GEORGE J. |
| v. ) | LIMBERT |
| ) | |
| MICHAEL J. ASTRUE, ) | MEMORANDUM OPINION |
| COMMISSIONER OF ) | AND ORDER |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Tammy L. Welch ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS the instant case for further factfinding, analysis, and articulation by the administrative law judge ("ALJ"):

**I**.    **PROCEDURAL AND FACTUAL HISTORY**

On December 16, 2004 and January 6, 2005, Plaintiff filed applications for SSI and DIB, respectively, alleging disability beginning July 1, 2004.  Tr. at 51-52, 527-28.  The SSA denied Plaintiff's applications initially and on reconsideration.  Tr. at 38, 39, 529, 533.  On July 8, 2005, Plaintiff filed a request for an administrative hearing.  Tr. at 47.  On September 24, 2007, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel.  Tr. at 537-87.  At the hearing, the ALJ heard testimony from Plaintiff and Thomas Nimberger, a vocational expert ("VE").  *Id*.  On January 18, 2008, the ALJ issued a Decision ("Decision") denying benefits.  Tr. at 11-24.  Plaintiff filed a request for review, Tr. at 25, which the Appeals Council denied.  Tr. at 7-10.

On June 29, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision.  ECF Dkt. #1.  On November 2, 2010, Plaintiff filed a brief on the merits.  ECF Dkt. #14.  With leave of

Court, on November 4, 2010, Plaintiff filed an amended brief on the merits. ECF Dkt. #16. On January 20, 2011, Defendant filed a brief on the merits. ECF Dkt. #19. Plaintiff filed a reply brief on February 4, 2011. ECF Dkt. #22

**II.** **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from low back pain, diabetes mellitus, sleep apnea, polycystic ovarian syndrome, depression, and obesity, which qualified as severe impairments under 20 C.F.R. §404.152(c) and 416.920(c). Tr. at 16. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 17-18. The ALJ ultimately concluded that Plaintiff has the residual functional capacity ("RFC") to perform a range of sedentary work, with the following limitations: she can lift, carry, push and pull 20 pounds occasionally and ten pounds frequently; she can sit for four hours and stand and/or walk for four hours in an eight hour work day; she cannot operate foot pedals or climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; she can frequently balance and occasionally stoop, kneel, crouch and crawl; her manipulative and visual abilities are within normal limits; she has 50% hearing loss that is corrected with hearing aids; she must avoid extreme heat, wetness, humidity, smoke, fumes, workplace hazards, unprotected heights, and moving machinery; she is limited to simple, repetitive tasks and cannot perform complex tasks; she cannot perform work requiring arbitration, confrontation, or negotiation; and she cannot remember detailed instructions or carry out detailed instructions. *Id*. at 18. Based upon the VE's testimony, the ALJ further concluded that Plaintiff could perform her past relevant work as an assembler as that job is generally performed in the national economy, and that she could get a job as an assembler of small products, a receptionist, or an order clerk.

**III.** **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R.

        §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, __ F.3d __, 2011WL 274792, *3, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where

the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V.     ANALYSIS

Plaintiff advances several arguments in this appeal, all of which relate to the ALJ's analysis at steps four and five. First, Plaintiff argues that the ALJ erred in concluding that she is capable of performing her past relevant work as an assembler. A claimant is not disabled at step four if she can perform her past relevant work "as generally performed in the national economy." 20 C.F.R. §404.1560(b)(2). At the hearing, the VE acknowledged that Plaintiff was an assembler at Bonne Bell, that the position constituted past relevant work, and that the job required her to stand eight hours per day. *Id*. at 556. Based upon the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as an assembler, not as she performed it at Bonne Bell, but as it is generally performed in the national economy.

The VE testified that "[the Dictionary of Occupational Titles ("DOT")] list [sic] assembly mostly as light work but it is also sedentary by option and by mandate a considerable amount of time." *Id*. at at 556. However, the VE qualified his testimony, stating "[u]nless moderate troubles with concentration, persistence, and pace take someone off task more than, you know, seven/eight. . . ." *Id*. The ALJ interrupted the VE, stating, "Okay. I see what you're driving at. I'll go further and define moderate in that sense as being five minutes per hour." *Id*. The VE then observed that "[five minutes] would fall within the motion time study industry perimeters so such a hypothetical person could be not [sic] her past job but could do assembly work." *Id*. However, the VE continued, "I'll call assembler of small products, 706.684-022, and I'll be looking at significantly diminished numbers in order to accommodate for that variance from the DOT." *Id*.

The ALJ relied upon the foregoing testimony to conclude that Plaintiff could perform past relevant work as an assembler not as actually performed (standing for eight hours) but as generally performed in the national economy. Plaintiff argues that the VE conflated steps four and five, and

-4-

that he never stated that Plaintiff could perform her past relevant work as generally performed in the national economy. Because the DOT lists assembler of small products as light work, Plaintiff asserts that the ALJ erred when he ruled that she was not disabled because she could perform "a subset of assembler jobs in the national economy" and not her past relevant work as an assembler as generally performed. ECF Dkt. #16, p. 7.

After reviewing the hearing transcript, the Court finds that the VE's analysis was not clear with respect to Plaintiff's ability to perform past relevant work. Although it appeared that the VE reached the conclusion that Plaintiff could perform past relevant work, the conclusion is directly contravened by his next statement that the hypothetical person could perform the small products assembler job, but that the number of available jobs would be significantly diminished in order to accommodate for that variance from the DOT at step five. Because the VE's testimony regarding the step four and step five analyses were jumbled at the hearing, the Court finds that substantial evidence does not exist to support the ALJ's conclusion that Plaintiff could perform her past relevant work. However, the ALJ's decision at step four may amount to harmless error if substantial evidence supports his conclusion at step five that Plaintiff possesses the vocational qualifications to perform specific jobs.

The remainder of Plaintiff's arguments on appeal relate to the ALJ's analysis at step five. Once it is determined that a claimant does not have the RFC to perform his past relevant work, the burden shifts to the Commissioner to show that the claimant possesses the capacity to perform other substantial gainful activity which exists in the national economy. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Anthony v. Astrue*, 266 F. App'x 451, 460 (6th Cir. 2008) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)). "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs. *Id.* However, the hypothetical question posed to a vocational expert must accurately portray the claimant's physical and mental state. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

The vocational expert's testimony may assist the ALJ in determining whether there is work which Plaintiff can perform existing in the national economy in significant numbers in the region in which Plaintiff lives or in several regions in the country. "It is the Secretary's job to evaluate the trustworthiness of a vocational expert's testimony." *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). The Sixth Circuit has indicated that there is no bright line delineating a significant number from an insignificant number, however, the court noted that the question "should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). In making this determination, the ALJ should consider: "the level of [the] claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance [the] claimant is capable of traveling to engage in the assigned work, the isolated nature of the jobs; [and] the types and availability of such work[.]" *Hall*, 837 F.2d at 275.

With respect to jobs in the local economy that a hypothetical person with Plaintiff's RFC could perform, the ALJ wrote:

> For the sake of completeness and in attempting to give the claimant every benefit of the doubt, I asked Mr. Nimberger if other jobs would exist based on claimant's age, education, past relevant work and residual functional capacity. He said there would and cited assembler of small products (Dictionary of Occupational Titles (DOT) #706.684-022) with 350,00 [sic] such jobs in the nation and 1,200 locally (Northeast Ohio); receptionist (DOT #237.367-038) with 290,000 such jobs in the nation and 1,200 locally; and order clerk (DOT #209.567-014) with 400,000 such jobs in the nation and 2,000 jobs locally.

Tr. at 23.

In her second argument, Plaintiff contends that the ALJ violated her right to the source of the job-incidence data upon which the ALJ relied for his decision. The Commissioner has a duty at step-five of providing evidence demonstrating that other work the claimant can perform exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). Plaintiff relies upon a Seventh Circuit case that states "[a] vocational expert is 'free to give a bottom line' [when testifying before an ALJ,] but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *McKinnie*

*v. Barnhart*, 368 F.3d 907, 911 (7th Cir. 2004) quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir.2002). In those instances, " [i]f the basis of the vocational expert's conclusions is questioned at the hearing ... then the ALJ should make an inquiry ... to find out whether the purported expert's conclusions are reliable." *Id*.

Here, Plaintiff requested the data, but the VE responded that he did not bring the data to the hearing, and then stated that the underlying data was "public knowledge" and Plaintiff could go to the library to obtain the information. Tr. at 584. At the conclusion of the hearing, Plaintiff argued that the VE's unwillingness to produce the source documents invalidated his testimony. *Id.* After considering Plaintiff's argument, the ALJ gave Plaintiff the opportunity to depose the VE at a later date. Tr. at 586. The ALJ instructed Plaintiff to provide a list of questions within ten days, and then he would decide whether the questions were relevant and whether a deposition was necessary. *Id.* Because Plaintiff was given the opportunity to acquire the information, but did not follow through with a separate deposition of the VE, she cannot assert that she was not given the requisite information. The ALJ in *McKinnie* told the claimant's attorney that the VE could refuse to compile her data and references unless the claimant compensated her for her time. *McKinnie* at 909. The facts in this case are distinguishable from the facts in *McKinnie*.

Next, Plaintiff contends that the VE could not identify the number of full-time positions and part-time positions taken from the Census data. The VE initially stated that all of the positions taken from the Census data are full-time positions. However, when Plaintiff asked if the term "full-time" is defined as forty hours a week, the VE explained that "full-time" may also include jobs that involve a thirty hour workweek, but with full benefits. Tr. at 562. He explained that his wife's job at Bombay is one such job. When asked, "Are you confident that only full-time jobs are included in the numbers of jobs you named, the VE responded, "I'd have to put a probable on that. I'd have to look that up. I, I, and, and, because I'd have to look it up, I guess I'd have to say I don't know in all honesty right now" Tr. at 563. Plaintiff's counsel asked, "So if the Census data included part-time jobs, we don't know how many of the, you've made no specific deduction for part-time jobs. We don't know how many of the 1200 [assembler of small products jobs] and 1200 [receptionist jobs] and 2000 [order clerk jobs] are part-time. The VE responded, "That is correct." Tr. at 564.

In *Kane v. Astrue,* 2011 WL 3353866 (N.D. Ohio)(J. Lioi), the VE relied upon U.S. census data, but acknowledged that the data did not distinguish between part-time and full-time jobs. *Id*. at *5. In that case, the Court rejected the Commissioner's argument that the regulations recognize that census bureau data is a reliable source upon which the agency may rely at step five. The Court wrote, "the mere fact that the agency takes administrative notice of a particular data source does not mean that the source satisfies the step-five burden of production with respect to a claimant's ability to work on a 'regular and continuing basis." *Id.* A "regular and continuing basis" means 8 hours a day, 5 days a week, or an equivalent work schedule. SSR 96-8p.

The same problem exists here. The VE concedes at the hearing that he is uncertain as to the estimated number of full time positions available in the local economy based upon the hypothetical provided by the ALJ. Because the ALJ relied exclusively upon the VE's testimony to conclude that Plaintiff is capable of performing work other than her past relevant work, substantial evidence does not exist to support the ALJ's decision at step five.

For the foregoing reasons, the undersigned REVERSES the Commissioner's decision and REMANDS the case for further factfinding, analysis, and articulation by the ALJ regarding his analysis at step four and step five of the sequential analysis.

DATE: September 30, 2011

                         */s/George J. Limbert*
                         GEORGE J. LIMBERT
                         UNITED STATES MAGISTRATE JUDGE